IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Steven Louis Barnes, | C/A No. 4:08-00002-MBS-PJG |
| Plaintiff, | |
| vs. | **ORDER AND** |
| | **REPORT AND RECOMMENDATION** |
| George Dedmondt; Brain Williams; Shadell Stevens; Marcus Smith; Polly Hall; A. Dell Dobey, Heidi Pressley; Randy Doran; and Lt. Karen Jaggers, official and individual capacity, | |
| Defendants. | |

This civil rights matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC on the following motions: defendants' motion for summary judgment[1] (Docket Entry 74) and motion to strike (Docket Entry 193), as well as the plaintiff's motion for a hearing (Docket Entry 129), motion for judicial notice (Docket Entry 140), motion to appoint an expert (Docket Entry 158), motion for discovery (Docket Entry 159), motion to strike affidavits (Docket Entry 160), motion for partial summary judgment (Docket Entry 171), and motion to correct a filing error (Docket Entry 179). The plaintiff, Steven Louis Barnes ("Barnes"), a self-represented state prisoner, is currently incarcerated in the South Carolina Department of Corrections ("SCDC"). Barnes filed this action pursuant to 42 U.S.C. § 1983 asserting various complaints relating to his confinement at the Edgefield County Detention Center ("ECDC").

The defendants moved for summary judgment on September 19, 2008. (Docket Entry 74.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Barnes was advised of the summary

---

[1] Defendants Brenda B. Carpenter and O-Lee Sturkey have previously been dismissed from this lawsuit. (Docket Entries 63 & 113.) The remaining nine defendants have moved for summary judgment.

judgment and dismissal procedures and the possible consequences if he failed to respond adequately. (Docket Entry 75.) Notwithstanding the specific warning and instructions set forth in the court's Roseboro order, the plaintiff failed to respond to the motion. As Barnes is proceeding *pro se*, the court filed a second order on May 28, 2009, advising the plaintiff that it appeared to the court that he was not opposing the motion and wished to abandon this action, and giving the plaintiff an additional fifteen (15) days in which to file his response to the defendants' motions for summary judgment. (Docket Entry 147.) At Barnes's request, the court granted three additional extensions of time. (Docket Entries 155, 175, & 187) Despite that, Barnes's response, when he finally filed one, was untimely. (Docket Entry 192.) Additionally, Barnes filed a motion for partial summary judgment (Docket Entry 171) to which the defendants responded (Docket Entry 181). The nine motions currently pending in this matter are now before the court for a ruling and Report and Recommendation.

**BACKGROUND**

Barnes has a fairly extensive history of both criminal and civil cases that are relevant to the instant litigation. Barnes is currently subject to a life sentence for kidnapping and other offenses in the State of Georgia. At some point, Barnes was detained at ECDC on capital murder charges in South Carolina. Those charges are still pending. While housed at ECDC, Barnes was involved in several incidents during which he threw bodily fluids. Some of Barnes's claims in this lawsuit stem from these incidents. Pertinent here, Barnes was charged with destroying property after allegedly twice throwing bodily fluids on a food cart containing approximately fifty food trays for the detainees. ECDC assessed Barnes $268 for the damage to the food and trays. Barnes complains about the issuance of the warrant on these charges by the county magistrate and the assessment of the fine by ECDC. Similarly, Barnes was charged and convicted for throwing urine at a corrections

officer, Defendant Smith, in November of 2005. Barnes is currently serving a sentence in SCDC for that crime. See S.C. Code Ann. § 24-13-470 (describing the crime and penalties for the "throwing of body fluids on correctional facility employees and certain others"). His Complaint asserts a claim that the defendants used excessive force during the course of that November 2005 incident.

Also in 2005, Barnes filed a federal civil lawsuit asserting claims based upon the conditions of his confinement at ECDC. Barnes v. Dobey, et al., C/A No. 4:05-2073-MBS.[2] The Honorable Margaret B. Seymour, United States District Judge, granted summary judgment to the defendants upon the recommendation of United States Magistrate Judge Thomas E. Rogers, III. Barnes v. Dobey, et al., C/A No. 4:05-2073-MBS, 2007 WL 2908582 (D.S.C. Sept. 30, 2007). Barnes appealed. The United States Court of Appeals for the Fourth Circuit affirmed. Barnes v. Doby, et al., No. 07-7654, 284 Fed. Appx. 48 (4th Cir. July 23, 2008) (unpublished).

In the instant Complaint, Barnes raises a myriad of claims. First, he complains about the conditions of confinement at ECDC. These allegations include complaints about the food; concrete dust, fumes, and chemicals relating to repairs being made to the showers; sewage backups; an "obnoxious smell" in the cellblocks; poor ventilation; insufficient recreation time; and insufficient clothing for cold weather. Second, he complains about his access to the courts. Third, he complains that he has been denied proper medical treatment. Fourth, as mentioned above, Barnes contends that the defendants used excessive force on him by using a taser on him during the course of the incident where Barnes threw urine on Defendant Smith.[3] Fifth, also as mentioned above, Barnes complains that he was charged $268 to replace the food trays that he allegedly destroyed. Sixth, he complains that the defendants are not responding to his administrative grievances. Seventh, Barnes complains

---

[2]Defendant Dobey is also referred to as Doby.

[3]The facts surrounding this incident are discussed more fully below. See infra part B.9.

that the defendants are conspiring against him.[4]  Barnes seeks injunctive and declaratory relief, monetary damages, and the imposition of criminal charges against some of the defendants.[5]

## DISCUSSION

A.  **Barnes's Non-Dispositive Motions**

As an initial matter, Barnes has filed numerous motions that should be addressed prior to the court's review of the motions for summary judgment, including a motion for discovery (Docket Entry 159), a motion to strike affidavits (Docket Entry 160), and a motion to correct a filing error (Docket Entry 179).

On June 22, 2009, Barnes filed a motion for discovery. (Docket Entry 159.) A review of the prior proceedings in this case reveals that a scheduling order was issued on April 22, 2008 requiring discovery to be complete by June 22, 2008. Barnes moved for additional time to complete discovery, which was denied on August 22, 2008. (Docket Entry 69.)  Barnes has also filed motions seeking additional time to file pretrial motions, which were granted. Barnes was specifically advised that no further extensions would be granted. (Docket Entry 110.) However, in April 2009, almost a year after the case began, Barnes again sought leave to file additional pretrial motions and sought additional discovery. These motions were denied. (Docket Entries 145 & 146.) Barnes has failed to provide any reason for his failure to seek discovery during the time provided by the court. Therefore, Barnes's motion for discovery (Docket Entry 159) is again denied.

---

[4]This claims appears to be based on Barnes's belief that other detainees, Timothy Boyd and Toreeze Moton, were threatened for accepting Barnes's legal advice and told to stop listening to Barnes.  Barnes does not have standing to assert this claim.  Warth v. Seldin, 422 U.S. 490, 499 (1975) (stating that "a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim on the legal rights or interests of third parties").

[5]Because "[n]o citizen has an enforceable right to institute a criminal prosecution," Lopez v. Robinson, 914 F.2d 486, 494 (4th Cir. 1990), to the extent that Barnes seeks criminal prosecution of the defendants, such relief is not available.

Barnes has also filed a motion to strike several of the affidavits that the defendants submitted in support of summary judgment. (Docket Entry 160.) Specifically, Barnes asks that the affidavits of Defendants Williams, Dedmondt, and Smith be stricken. (Docket Entries 74-3, 74-8, & 74-10.) Notably, this motion was filed nine months after the affidavits were submitted to court. Barnes asserts that the statements in these affidavits contradict previous testimony by Defendants Dedmondt and Smith in Barnes's criminal trial.

Upon review of the affidavits and Barnes's allegations, the court finds that Barnes's motion to strike the affidavits (Docket Entry 160) should be denied. See Graves v. Horry-Georgetown Technical College, 512 F. Supp. 2d 413, 417 n.1 (D.S.C. 2007) (stating that while it may be appropriate to disregard inconsistent statements in an affidavit, striking is a drastic sanction that was not appropriate under the facts presented). However, as discussed below, the court has considered Barnes's arguments regarding these alleged inconsistencies with regard to the summary judgment motions.

Finally, Barnes has moved to correct a filing error. Specifically, Barnes asserts that Docket Entries 161 and 162 were incorrectly docketed as appeals to the United States Court of Appeals for the Fourth Circuit. Barnes states that these documents should have been filed as appeals from the magistrate judge's order to the assigned district judge. On July 24, 2009, the Fourth Circuit dismissed Barnes's appeals as improvidently docketed. (Docket Entry 182.) To the extent that Barnes's motion also seeks for Docket Entries 161 and 162 to be considered as appeals of the court's ruling in Docket Entries 145 and 146 to the assigned district judge, Barnes's motion is denied, as the appeals were untimely pursuant to Rule 72(a) of the Federal Rules of Civil Procedure.

B.  **Motions for Summary Judgment**

Both Barnes and the defendants have filed motions for summary judgment, which the court will address together.[6] (Docket Entries 74 & 171.)

1.  **Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth

---

[6]Despite numerous extensions of time resulting in a total of over ten months for Barnes to file a response and in disregard of specific warnings from the court, Barnes's response in opposition to the defendants' motion for summary judgment was untimely. (Docket Entry 192.) Accordingly, the court has not considered it in making its recommendations on the pending dispositive motions. The court observes, however, that even if the court accepted Barnes's untimely response, Barnes makes no argument that would change this court's recommendation.

specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### 2. Immunity from Suit

As an initial matter, to the extent they are sued in their official capacities, Defendants Dobey, Hall, Jaggers, Presley, Smith, Doran, Williams, and Dedmondt are all immune from suit pursuant to the doctrine of sovereign immunity. Will v. Michigan Dep't of State Police, 491 U.S. 58, 70, (1989). As arms of the State, these defendants are not "persons" within the meaning of 42 U.S.C. § 1983. See Gulledge v. Smart, 691 F. Supp. 947, 954 (D.S.C. 1988) (holding that both sheriffs and deputy sheriffs are agents of the State and immune from suit); see also Cone v. Nettles, 417 S.E.2d 523 (S.C. 1992) (stating that the sheriff and his employees are state officials).

### 3. Mootness

Barnes's request for injunctive and declaratory relief have been rendered moot by his transfer from the Edgefield County Detention Center to the South Carolina Department of Corrections. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

### 4. Res Judicata/Collateral Estoppel

Barnes's claim regarding the lack of access to the courts due to the alleged deficiency of legal materials at ECDC is barred by the doctrine of res judicata. Under the doctrine of res judicata, "if the later litigation arises from the same cause of action as the first, then the judgment in the prior

*PJG*

action bars litigation 'not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented'" Orca Yachts, L.L.C. v. Mollicam, Inc., 287 F.3d 316, 318 (4th Cir. 2002) (quoting In re Varat Enters., 81 F.3d 1310, 1315 (4th Cir. 1996)). In his previous lawsuit, C/A No. 4:05-2073-MBS-TER, Barnes raised this very claim against some of the same defendants named here. This claim was fully litigated and decided adversely to Barnes. Accordingly, he cannot reassert it here. Moreover, any claim regarding access to the courts while at ECDC that is asserted against a defendant who was not named in Barnes's prior lawsuit would similarly be barred by the doctrine of collateral estoppel. Sedlack v. Braswell Servs. Group, Inc., 134 F.3d 219, 224 (4th Cir. 1998) ("For collateral estoppel to apply, the proponent must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.").

### 5. **Barnes's Remaining Claims Regarding Prison Conditions**

Barnes's atypical status while at ECDC presents an interesting question regarding the applicable constitutional provision with regard to his conditions of confinement claims. Conditions of confinement of convicted prisoners are evaluated under the Eighth Amendment's proscription against cruel and unusual punishment, while conditions of confinement of pretrial detainees are evaluated under the Due Process Clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535, 537 n.16 (1979); see also Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988). In Barnes's previous lawsuit, Judge Seymour noted that although Barnes is a convicted felon, the parties and magistrate judge in the prior litigation treated him as a pretrial detainee. Barnes v.

Dobey, et al., C/A No. 4:05-2073-MBS, 2007 WL 2908582 at *2 (D.S.C. Sept. 30, 2007). "[P]retrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." Young v. City of Mount Ranier, 238 F.3d 567, 575 (4th Cir. 2001) (citing City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 243-44 (1983) and Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir.1992)). Accordingly, regardless of whether Barnes's claims are analyzed under the Fourteenth or Eighth Amendment, the same standards generally apply. However, as Judge Seymour noted, a pretrial detainee "may be detained by the government to ensure his presence at trial; however, the conditions and restrictions to which he is subject at the detention facility cannot amount to punishment, or otherwise violate the Constitution." Id. (citing Bell v. Wolfish, 441 U.S. 520, 536 (1979).

Regardless of which standard applies, a plaintiff asserting a claim under 42 U.S.C. § 1983 must show: (1) that he or she was injured; (2) by the deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws; (3) by a person acting under color of state law. See 42 U.S.C. § 1983. Barnes's claims concerning the conditions of confinement at ECDC include complaints about the food; concrete dust, fumes, and chemicals relating to repairs being made to the showers; sewage backups; an "obnoxious smell" in the cellblocks; poor ventilation; insufficient recreation time; and insufficient clothing for cold weather.[7] Barnes does not allege any physical injuries as a result of these complaints. Barnes summarily states that the odors "wreck[] havoc on the respiratory systems" and that these conditions may put Barnes at risk for later physical ailments. (Compl., Docket Entry 1 at 6-7.) These unsupported allegations are insufficient to state a viable § 1983 claim. Moreover, by federal statute, "No Federal civil action may be brought

---

[7]Barnes's claims relating to food were previously adjudicated in C/A 4:05-2073-MBS and for the reasons discussed in part B.4. are barred by the doctrines of res judicata or collateral estoppel.

by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). These conditions, while uncomfortable for Barnes, simply do not rise to the level of a constitutional violation. Bell, 441 U.S. at 546 ("A detainee simply does not possess the full range of freedoms of an unincarcerated individual."); Lasure v. Doby, C/A No. No. 0:06-cv-1527, 2007 WL 1377694, *5 (D.S.C. 2007) (noting that plaintiff was "being held in a county jail facility, not a hotel"). Therefore, these claims cannot go forward.

**6.    Medical Claims**

The standard for reviewing medical claims of pretrial detainees is the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir.1988) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Farmer v. Brennan, 511 U.S. 825, 847 (1994); see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004). The government is required to provide medical care for incarcerated individuals. Estelle, 429 U.S. at 102. However, to establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106.

Barnes alleges in his complaint that he was denied proper dental treatment. Barnes also asserts that he believes he contracted three different types of staph infections and that ECDC does not take adequate measures to prevent the spreading of staph infection. As evidenced by his medical

records, Barnes made numerous "inmate doctor requests." (See generally Medical Records, Docket Entries 74-16 to 74-20.) In response to the requests, it appears that over the course of his detention Barnes was medically evaluated and treated on multiple occasions for various ailments, including dental complaints, and was prescribed various types of medication. (Id.) Generally, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). With regard to the complaints concerning allegations of staph infection, Hall attests there have been reported incidents of staph infections at ECDC; however, there is no evidence that Barnes suffered a staph infection while at ECDC. (Hall Aff. ¶¶ 36, 39, Docket Entry 74-11 at 5-6.) Hall further attests that "[i]f an inmate is diagnose[d] with a staph infection, every effort is made to disinfect that inmate's living quarters, and to quarantine that inmate until the staph infection is controlled and no longer contagious." (Id. at ¶ 37.) The record clearly shows that, when requested, Barnes received medical and dental treatment. Barnes has failed to demonstrate that ECDC was deliberately indifferent to his medical needs. Moreover, if any injury did occur, there is no evidence that it rose beyond the *de minimis* type of injuries that are not compensable in a § 1983 action. See Riley v. Dorton, 155 F.3d 479 (4th Cir. 1998) (stating that "under the Fourteenth Amendment 'there is, of course, a *de minimis* level of imposition with which the Constitution is not concerned'") (quoting Ingraham v. Wright, 430 U.S. 651, 674 (1977)).

   7. **Monetary Fee**

Barnes complains that he was charged $268 to replace the food trays that he allegedly destroyed. However, Defendant Hall attests that although Barnes ruined fifty food trays and was assessed a charged that equaled the cost of the food trays, that "fee was never collected and the charge expired upon [Barnes's] release" from ECDC. (Hall Aff. ¶¶ 48-49, Docket Entry 74-11 at

7.) There being no further relief the court can provide, this claim is moot. See Leonard v. Hammond, 804 F.2d 838, 842 (4th Cir. 1986).

### 8. Excessive Force Claim

On November 3, 2007, Defendant Smith, a jailer at ECDC, went to Barnes's cell to give him some medications. Because of Barnes's prior history of violence and past incidents of throwing bodily fluids on corrections officers as well as on the food cart, Smith was accompanied by two deputies of the Edgefield County Sheriff's Department, Defendants Dedmondt and Williams. (Smith Aff. ¶ 5, Docket Entry 74-8 at 2.) As he approached the flap in Barnes's cell door to pass the medications to Barnes, Smith asked Barnes if he was going to behave, or if he was going to throw something on Smith. (Id. ¶ 9.) Barnes replied that he was not going to throw anything. (Id. ¶ 10.) Smith then administered Barnes his medication. When Smith leaned down to collect the medication cup from Barnes, Barnes threw a cup of urine at Smith through the flap. (Id. ¶¶ 11-12; Dedmondt Aff. ¶¶ 15-16, Docket Entry 74-3 at 3; Williams Aff. ¶¶ 11-12, Docket Entry 74-10 at 3; accord Pl.'s Mot. Summ. J. at 4-5, Docket Entry 171 at 4-5.) Officer Dedmondt then instructed Smith to open the door so that they could remove Barnes from his cell and clear it of any other contraband.

According to the defendants, Barnes refused to cooperate and refused to follow instructions so that the officers could restrain him while they cleared his cell. Rather, Barnes held his hands in the air and approached Dedmondt. (Dedmondt Aff. ¶¶ 21, 24, Docket Entry 74-3 at 4; Williams Aff. ¶ 19, Docket Entry 74-10 at 3.) Accordingly, Dedmondt used his taser on Barnes. (Dedmondt Aff. ¶ 27, Docket Entry 74-3 at 5; Williams Aff. ¶ 19, Docket Entry 74-10 at 3-4.) When Barnes still did not follow the officers' instructions, Dedmondt "tased" Barnes again. (Dedmondt Aff. ¶ 33, Docket Entry 74-3 at 6; Williams Aff. ¶ 22, Docket Entry 74-10 at 4.) Because of Barnes's persistent resistance, Dedmondt was unsure whether both prongs of the taser had made contact with Barnes

such that he would feel the electric current from the taser; accordingly, Dedmondt administered a "contact stun" with the taser, applying it directly to Barnes's ankle. (Dedmondt Aff. ¶¶ 35-36, Docket Entry 74-3 at 6; Williams Aff. ¶ 24, Docket Entry 74-10 at 4.) Barnes was then subdued and forcibly dragged from his cell. (Dedmondt Aff. ¶ 45, Docket Entry 74-3.)

Barnes disputes that he was a threat and challenges the credibility of some of the defendants' affidavits based on inconsistencies with their testimony at his criminal trial.[8] According to Barnes, Dedmondt used the taser "maliciously and sadistically" even though Barnes was "no longer a threat to internal order." (Compl., Docket Entry 1 at 8.) He further appears to complain that Dedmondt did not immediately cease tasing him once Williams succeeded in handcuffing him. (Id. at 9.) Barnes further asserts that the defendants dragged him through the puddle of the "unknown substance" (urine) he had thrown at Smith when they were forcibly removing Barnes from his cell. (Id.)

After permitting Barnes to shower, officers took Barnes to the local hospital, where two EKGs were performed. After determining that Barnes had suffered no physical injury from the use of the taser, Barnes was returned to ECDC.

---

[8]The defendants submitted a copy of the trial transcript and argue that Barnes has taken the defendants' testimony out of context. Further, the defendants argue that to the extent that inconsistencies exist, they are immaterial, as they relate to whether Defendant Smith was hit with bodily fluids in the face or elsewhere, whether empty cups were or were not found in Barnes's cell, and whether Defendant Smith was present for the incident that Barnes asserts was excessive force.
    The court finds that the alleged inconsistencies raised by Barnes do not create issues of fact that impact the analysis of whether unreasonable force was applied. See Brannon v. Luco Mop Co., 521 F.3d 843, 847-48 (8th Cir. 2008) (stating that the court need not deny summary judgment when purported inconsistencies in affidavit are not determinative). Even disregarding the defendant's testimony on the points disputed by Barnes, for the reasons discussed below, the record on the undisputed (or legally indisputable) facts would not permit a reasonable jury to find for Barnes on his excessive force claim.

The Fourth Circuit has addressed the specific question of the use of a taser on a pretrial detainee. In Orem v. Rephann, 523 F.3d 442 (4th Cir. 2008), the Court began its analysis by identifying the specific constitutional right allegedly infringed by the challenged application of force. Id. at 445. Recognizing the claim as one arising under the Fourteenth Amendment, the Court then framed the issue as whether the defendant "inflicted unnecessary and wanton pain and suffering." Id. at 446 (citing Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998)). In answering the question of whether this constitutional line had been crossed, the Court considered the following factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted; and (4) whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm. Id. at 446 (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Under the facts presented in Orem, the Fourth Circuit found that a reasonable jury could find that the defendant's use of the taser was unconstitutional. Orem, 523 F.3d 442. Important to the Fourth Circuit's conclusion were the facts that Orem was a 100-pound female who, at the time the taser was used, was already restrained via a cage in the back of a patrol car as well as a "hobbling device" type of leg restraint; that the defendant had tased Orem in very sensitive areas including under her left breast and on her inner thigh, even though the right side of her body was closer to him; and that the defendant tased Orem in response to unruly behavior and profanity directed toward him, telling Orem after he tased her that she needed to respect him. Id. at 444-45, 447. Further, the Court observed that Orem had been arrested in connection with a domestic dispute and that the defendant knew Orem's husband. Id. at 444, 446, & n.3. Finally, the taser left Orem with a permanent, sunburn-like scar on her inner thigh. Id. at 445. Presented with these facts, the Orem Court found that a jury could conclude that the defendant's use of the taser was not a good faith effort to restore

discipline, but rather an "unnecessary and wanton infliction of pain." Id. at 447. Further, the Court concluded that because Orem experienced electric shock and pain and developed a scar, her injuries were not *de minimis* as a matter of law. Id. at 447-48. Finally, the Orem Court held that the defendant was not entitled to qualified immunity. Id. at 449.

The facts in Orem vastly differ from those presented here. Although Barnes disputes that he was a threat and repeatedly asserts that the tasing was excessive, he does not (or cannot) dispute certain materially distinguishable facts. First, unlike in Orem, the potential need for force was heightened given Barnes's history of violent crime and, in particular, his pattern of throwing bodily fluids on corrections officers and on the food cart. Barnes presented a sufficient threat that ECDC found it necessary to call in sheriff's deputies to assist in administering medications to Barnes. Significantly, this potential threat was borne out by Barnes when he assaulted Smith with urine.[9] Although Barnes blithely asserts that he did not present a threat to internal order, the indisputable evidence shows that Barnes—standing 6' 4" and weighing nearly 300 pounds—was out of control, having just assaulted a corrections officer by throwing bodily fluids on him. Even viewed in the light most favorable to Barnes, the totality of the circumstances compels the conclusion that the force utilized by the defendants was applied in a good faith effort to maintain and restore discipline and was not an unnecessary and wanton infliction of pain.[10] Cf. Orem, 523 F.3d at 446-47.

Even if the use of the taser could be found to be excessive under these circumstances, the court finds that the defendants are entitled to qualified immunity. Sheriff's Deputies Dedmondt and

---

[9]As Barnes has been convicted by a jury beyond a reasonable doubt for throwing urine on Defendant Smith, he cannot now dispute that fact. United States v. Wight, 839 F.2d 193, 196 (4th Cir. 1987) (applying the doctrine of collateral estoppel to issues litigated in a criminal case to a subsequent civil proceeding).

[10]Moreover, Barnes presents absolutely no evidence to support his assertion that the taser was used against him because of his race.

PJG

Williams were called to assist the ECDC jailers because of Barnes's history of violence and throwing bodily fluids. Moreover, ECDC specifically requested their help because, unlike the ECDC jailers, the sheriff's deputies were trained in using electronic shock control devices, such as the taser. (Hall Aff. ¶¶ 29-31, Docket Entry 74-11 at 5.) The officers at the scene knew of Barnes's violent history and were confronted with a large, truculent, unrestrained prisoner who had just assaulted Defendant Smith with urine. Moreover, the officers reasonably perceived that Barnes remained a threat, as was borne out by a subsequent search of Barnes's cell, which revealed three additional cups of urine and feces that could have been thrown at them. (Dedmondt Aff. ¶ 40, Docket Entry 74-3 at 7; Trial Tr. at 109-12, Docket Entry 170-2 at 94-97.)[11] Based on these undisputed facts, the court finds that a reasonable officer could have believed that using the taser was lawful in light of the clearly established law and information that the defendants had at the time. See Orem, 523 F.3d at 448 (" 'Because police officers are often forced to make split-second judgments[] in circumstance[s] that are tense, uncertain, and rapidly evolving, the facts must be evaluated from the perspective of a reasonable officer at the scene, and the use of hindsight must be avoided.' ") (quoting Waterman v. Batton, 393 F.3d 471, 476-77 (4th Cir. 2005)). Accordingly, the defendants are entitled to qualified immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992) (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

---

[11]Barnes's attempt to create a factual dispute about this by asserting that Officer Dedmondt testified that he did not see any "empty cups" fails, as these statements are not inconsistent. (Docket Entry 160 at 3-4.)

Finally, even if the use of the taser was unlawful and the defendants were not entitled to qualified immunity, Barnes has failed to show that he suffered more than *de minimis* injury. See Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994) (*en banc*) (stating that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*"). As Judge Shedd observed in his concurring opinion in Orem, "Not every use of a taser will give rise to a constitutional violation . . . ." Id. at 451. Although the Fourth Circuit has observed that a plaintiff can recover for an injury when there is an "impermissible infliction of pain" or the challenged conduct is otherwise "of a sort repugnant to the conscience of mankind," case law shows that the use of a taser does not necessarily constitute such a situation *per se*. Orem, 523 F.3d at 448; see also Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004) (Fourth Amendment excessive force claim) (observing that "being struck by a taser gun is an unpleasant experience" and concluding that under the "totality of the circumstances" that the use of the taser gun did not violate the plaintiff's Fourth Amendment rights); Yarborough v. Montgomery, 554 F. Supp. 2d 611, 620 (D.S.C. 2008) (Currie, J.) (Fourth Amendment excessive force claim) ("There is no case law in the Fourth Circuit or the Supreme Court which would establish that under the facts similar to those of this case, an individual has a right to be free from seizure by an officer's deployment of a Taser."). Rather, the circumstances must be examined in determining whether the use of the taser violates the applicable constitutional standard and results in more than a *de minimis* injury. See Orem, 523 F.3d at 448. Here, the evidence indisputably shows that Barnes was taken to the hospital, two EKG tests were performed, and Barnes was determined to have suffered no physical injury. (Dedmondt Aff. ¶¶ 42-43, Docket Entry 74-3 at 7.) Barnes himself, although vehemently objecting to the pain and unpleasantness of being subjected to a taser, does not contend that he suffered physical injury apart from the experience itself. Accordingly, under the totality of

the circumstances presented here, Barnes cannot show that his injuries were more than *de minimis*. Gilchrist v. Reid, et al., C/A No. 3:05-3338-PMD, 2006 WL 2927436, *3-*4 (D.S.C. Oct. 11, 2006) (unpublished) (concluding that use of a taser was a *de minimis* injury); see also Norman, 25 F.3d at 1263; Riley v. Dorton, 115 F.3d 1159, 1167 (4th Cir. 1997) (applying the requirement that an injury must be more than *de minimis* to be actionable under an excessive force claim brought by a pretrial detainee).

**ORDER**

For the reasons discussed above, it is hereby ordered that Barnes's motion for discovery (Docket Entry 159) is denied. It is further ordered that Barnes's motion to strike affidavits (Docket Entry 160) is denied and his motion to correct a filing error (Docket Entry 179) is terminated as moot.

**RECOMMENDATION**

Further, for all of the foregoing reasons, the court recommends that the defendants' motion for summary judgment (Docket Entry 74) be granted and that Barnes's motion for partial summary judgment (Docket Entry 171) be denied. In light of the court's rulings and recommendations, the court directs the Clerk of Court to terminate the remaining pending motions should its recommendations regarding the dispositive motions be adopted by the district judge. (Docket Entries 129, 140, 158, & 193.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 26, 2009
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the district judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).